UNITED STATES v. BOHL.

(District Court, D. Connecticut. October 15, 1903.)

No. 1,400.

1. RENOVATED BUTTER—PROVISION FOR INSPECTION AND MARKING—CONSTRUC-
TION OF STATUTE.

The purpose of section 5, Act May 9, 1902, c. 784, 32 Stat. 196 [U. S.
Comp. St. Supp. 1903, p. 269], relating to process or renovated butter,
is to provide for the sanitary inspection and the marking and branding
of such butter at the place of manufacture, to the end that none shall be
shipped from the factory which can in any way be injurious to the health
of the consumer, and the section authorizes the Secretary of Agriculture
to cause such inspection to be made, and to "make all needful regula-
tions for carrying this section into effect." A regulation, however, which
prohibits a dealer, receiving or handling such butter after it has been
duly inspected, marked, and branded, and shipped from the factory, from
obliterating the marks or brands thereon has no relation to such san-
itary purpose, and finds no warrant in the statute, being calculated only
to prevent fraud on the part of the dealer in his relations with his cus-
tomers, and there is nothing in the statute which will support an indict-
ment or information for the violation of such a regulation.

On Demurrer to Information.

The material part of the information was as follows:

"Francis H. Parker, attorney for the United States for the district of Con-
necticut, who in this behalf prosecutes in the name of the United States and
for the United States, comes here into said court on this the twenty-fifth
day of August, in the year of our Lord one thousand nine hundred and three,
in his own proper person, and, with leave of the court, for the United States
gives the said court here to understand and be informed that heretofore,
to wit, on the ninth day of February, in the year of our Lord one thousand
nine hundred and three, at the town of Waterbury, in the county of New
Haven, in the state and district of Connecticut, and within the jurisdiction
of this court, Valentine Bohl, of said town of Waterbury, doing business
under the name of the Valentine Bohl Company, and being then and there
a wholesale dealer in meats, butter, renovated butter, and other food products,
then and there had in his possession for sale, in the usual course of his said
business, a tub of renovated butter containing thirty pounds, more or less,
in weight of said renovated butter, packed in a solid body or mass therein,
into the upper surface of which butter, so packed in a solid body or mass
in said tub as aforesaid, had been stamped and branded a mark and brand
consisting of the words 'Renovated Butter,' in letters not less than one-half
inch square, in gothic style, and depressed not less than one-eighth inch,
which said mark and brand in the upper surface of said butter was in all
respects as required by the statutes of the United States in such case made
and provided, and by the rules and regulations made under date of October
20, 1902, and promulgated under date of November 1, 1902, by the Secretary
of Agriculture, pursuant to authority vested in him by statute law respecting
the marking and branding of renovated butter, said rules and regulations
requiring that 'when packed in a solid body or mass there shall be stamped
or branded into the upper surface of the butter the words "Renovated But-
ter" in one or two lines, the letters to be gothic in style, not less than one-
half inch square, and depressed not less than one-eighth inch'; which said
renovated butter so packed in a solid body or mass in said tub as aforesaid
was made and marked and branded as aforesaid, in factory number 5, in the
Tenth Internal Revenue Collection District in the state of Illinois, after the
first day of July, A. D. 1902, and was thereafter transported from said fac-
tory, in said state of Illinois, to the said town of Waterbury, in the state
of Connecticut. And said attorney for the United States further gives said
court to understand and be informed that said Valentine Bohl, doing busi-

125 F.—40

ness as aforesaid, on said ninth day of February, A. D. 1903, at said town of Waterbury, then and there having in his possession for sale as aforesaid said tub of renovated butter, so lawfully marked and branded as aforesaid, did then and there knowingly, wrongfully, and unlawfully deface and destroy the said mark and brand consisting of the words 'Renovated Butter,' as aforesaid, so stamped and branded in letters of the size and style aforesaid, and depressed to the depth aforesaid into the upper surface of the butter, packed in a solid body or mass into said tub as aforesaid, thereafter holding in his possession for sale the renovated butter in said tub contained without the said mark or brand by statute law of the United States and the rules and regulations made and promulgated by the Secretary of Agriculture required as aforesaid, which said defacing and destroying of said mark and brand so stamped and branded into the upper surface of said renovated butter, so packed as aforesaid in a solid body or mass in the tub aforesaid, was and is against the peace and dignity of the United States, and contrary to the form of the statutes of the United States in such case made and provided, and to the rules and regulations of the Secretary of Agriculture made and promulgated in pursuance of such statutes; for which said offense said Valentine Bohl, upon a complaint against him, in writing and under oath, was duly examined before William A. Wright, a United States commissioner, by whom probable cause to hold said Valentine Bohl to bail to answer in this court therefor was duly found, as by a transcript of the proceedings before said United States commissioner on file in this court fully appears."

Francis H. Parker, U. S. Atty.

Nathaniel R. Bronson, for defendant.

PLATT, District Judge. The subjects of section 5 of the act of May 9, 1902, c. 784, 32 Stat. 196 [U. S. Comp. St. Supp. 1903, p. 269], are clearly "process or renovated butter," and the marking and branding thereof, prior to transportation. It is equally clear that the purposes of the section are to provide for the sanitary inspection of such butter at the place of manufacture, and to take every precaution in order that none shall be shipped from the factory which can in any way be injurious to the health of the consumer.

The acts of August 30, 1890, and March 3, 1891, cc. 839, 555, 26 Stat. 414, 1089 [U. S. Comp. St. 1901, pp. 3185, 3189], as amended March 2, 1895, c. 169, 28 Stat. 727, so far as they touch upon these subjects and purposes, are ingrafted into section 5 of act of 1902, and all rules and regulations adopted by the Secretary of Agriculture, which are calculated to carry such subjects and purposes into full effect, have all the force of the statute itself. Other portions of the act in question may gain their efficacy from the taxing clause of the Constitution, but section 5 goes to the commerce clause as the fountain whence its vigor springs.

It is idle to discuss whether or not the tub of butter, when it reaches the wholesaler, is still an article of interstate commerce.

Our crucial question is this: Does a rule or regulation forbidding the obliteration of the brand, as charged, tend in any manner to aid in the enforcement of strict sanitary inspection and care, or, if it pleases the inquirer, in the collection of the tax thereon? It is my opinion that the rule was of no value in either regard; it was, on the contrary, calculated to prevent fraud and subterfuge on the part of the dealer in his relations with the consumer. I do not decide that Congress has no power to take up that matter. I am content to say that in section 5 no such action was taken, nor was any attempt made

to do so. Beyond all this, if the Congress did intend to take such a step it signally failed in its effort.

It would be necessary to read into section 5, not only the general provisions of the acts relating to the inspection of meats and carcasses, but also the definite penalty inflicted for an infraction of the former laws, in a situation analogous to that which the Secretary of Agriculture attempts to provide for in his rules and regulations under this act. Such action is not permissible, either on strict legal principles · or upon the basis of fair dealing with the individual citizen. It follows from what I have said that the statute in question affords no warrant for the information which the learned District Attorney seeks to found upon it. The demurrer is sustained.

Let the information be dismissed.